476 So.2d 713 (1985)
BML INVESTMENTS, a Florida General Partnership, Petitioner,
v.
CITY OF CASSELBERRY, Florida, a Municipal Corporation, Respondent.
No. 85-243.
District Court of Appeal of Florida, Fifth District.
September 12, 1985.
Rehearing Denied October 8, 1985.
Albert R. Cook of Robinson, Rooks & Owen, P.A., Casselberry, for petitioner.
Clayton D. Simmons and Ned N. Julian, Jr., of Stenstrom, McIntosh, Julian, Colbert & Whigham, P.A., Sanford, for respondent.

ON PETITION FOR WRIT OF CERTIORARI
DAUKSCH, Judge.
BML Investments petitions this court for a writ of certiorari to review a final order entered by the circuit court denying BML's petition for writ of certiorari filed in that court. The petition in circuit court sought relief from a decision of the City Council of the City of Casselberry, Florida which denied approval of BML's revised preliminary development plan which sought construction of an apartment complex on 18.37 acres of land within the city limits.
BML acquired the property in January, 1984. The previous owner had the property rezoned from R-3 to planned unit development (PUD) zoning classification.[1] At *714 that time the previous owner was granted a preliminary development plan in accordance with the City's zoning code. That project contemplated building condominiums on the property. Due to the unavailability of sewer and water facilities the project did not proceed. The City contends that rezoning was conditioned upon the building of condominiums but the rezoning ordinances make no reference to any such limitation. The Casselberry Zoning Code permits both condominium and apartment complexes to be built on PUD zoned property.[2]See § 157.176, Casselberry Zoning Code.
On January 4, 1984, BML bought the property. BML wanted to change the design of the previous owner's proposal so it contacted the city attorney who indicated that the project should go through the preliminary development planning process again. After several amendments, a revised preliminary development plan was unanimously approved by the City's Planning and Zoning Commission and this recommendation was sent to the City Council. At a workshop session before the City Council, the revised plan was presented and additional changes were made and accepted by BML. On March 2, 1984, a public hearing was held before the City Council. Petitions against the project were submitted and testimony from several surrounding homeowners reflected that they were against the change from condominium to apartment development. A letter from the original owner, dated July 25, 1980, was considered by the City Council. The letter indicated that the original design called for condominium ownership of multi-family units. The City Council voted unanimously to deny the revised plan. The reasons given by the City Council for the denial were:
1. The Council originally approved the plan for condominium ownership and not for apartment rental.
2. The majority of the people affected opposed the change from condominiums to apartments.
3. High density requested by the developer.
4. New owner should be morally obligated to original owner's commitments.
5. Condominiums generally are better maintained and have lower crime risk.
BML sought review in the circuit court by a petition for writ of certiorari. In denying the petition, the court found that there is a distinction in the Casselberry Zoning Code (§ 157.176) between the permissible uses authorized in a PUD zoning classification in that condominiums are single-family attached dwellings rather than apartments which are multi-family dwellings. Further, the court found that the original approval of PUD zoning classification for the property was influenced by the representations of the prior owner that the project would be 100% condominium ownership. The court noted that the section of the Casselberry Zoning Code relating to the PUD zoning classification provides for conditions to be agreed upon between the zoning authority and applicant for a particular zoning classification. The court also found that the record was inadequate to determine whether the decision of the City Council to deny the request was supported by substantial competent evidence but the court stated the record did show that the City considered density, traffic, the opinions of the surrounding property owners and comparisons between apartment living and condominium ownership, all of which were deemed by the court to be appropriate factors for consideration. Finally, the court found that the specific controlling *715 provisions of the Casselberry Code were not unconstitutional.
The circuit court's review of the City's actions was limited to: (1) whether procedural due process was accorded, (2) whether the essential requirements of law were observed, and (3) whether the administrative findings and judgments were supported by competent substantial evidence. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982); Cherokee Crushed Stone v. City of Miramar, 421 So.2d 684 (Fla. 4th DCA 1982). This court, upon review of the circuit court's decision, is limited to a determination of whether the circuit court afforded procedural due process and applied the correct law. Vaillant. Further, it is well settled that courts will not interfere with administrative decisions of zoning authorities unless such decisions are arbitrary, discriminatory, or unreasonable. Conetta v. City of Sarasota, 400 So.2d 1051 (Fla. 2d DCA 1981); City of Naples v. Central Plaza of Naples, Inc., 303 So.2d 423 (Fla. 2d DCA 1974).
In Conetta the second district reversed a denial of a special exception to a zoning ordinance and granted petitioner's request for writ of certiorari. The special exception sought by petitioner was to build a guest house on her residential property. The denial of the special exception in that case was based solely on the proposal's unpopularity with surrounding residents and the conjecture that a subsequent owner of the property would not comply with the City's proscription against renting guesthouses. Neither factor was found to be relevant to the controlling city ordinance setting forth criteria to be utilized in determining whether a special exception should be granted. Courts have held that objections of residents in surrounding neighborhoods to proposed developments are not a sound basis for denying a permit to build. Conetta; City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974); see also 3 Anderson, American Law of Zoning, § 15.27.
In the instant case, like Conetta, the major consideration in denying BML's proposed development was that the majority of the persons affected opposed the change.[3] Although one property owner voiced opposition to the proposal citing traffic problems and increases in crime, no evidence was submitted in support of his claim. The opinions of surrounding landowners arguably falls within the criterion in the Casselberry Zoning Code that the Planning and Zoning Commission consider the relationship of the planned development surrounding the neighborhood and, to a lesser extent, the criterion considering the degree of departure of the proposed development from the surrounding residential areas, but such opinions, by themselves, are insufficient to support the denial. Conetta.
What causes us concern, however, is reason Number 3, "High density requested by the developer." Under the zoning ordinance, to secure approval of PUD zoning, the developer must submit its preliminary *716 plan, showing, among other things, the proposed density of the development. We gather from reason Number 3 that the revised preliminary plan submitted by petitioner increased the proposed density, and if this is so, it is of legitimate concern to the city in determining whether or not to approve the plan. Nevertheless, the record before us is insufficient, as it was before the circuit court, to determine whether this finding is based on substantial competent evidence.
We therefore grant the petition for writ of certiorari, quash the order of the circuit court, and remand the cause to the circuit court with directions to require an adequate record of the proceedings which were held in order to determine whether reason Number 3 as expressed by the city is supported by competent substantial evidence. If the record does not support this reason by competent substantial evidence, then the trial court shall grant relief to the petitioner.
WRIT GRANTED: ORDER QUASHED AND REMANDED WITH DIRECTIONS.
ORFINGER and UPCHURCH, JJ., concur.
NOTES
[1] A planned unit development is defined in the City's zoning code as:

PLANNED UNIT DEVELOPMENT. An area of land developed as a single entity or in approved stages in conformity with a final development plan by a developer or a group of developers acting jointly and under single ownership, which is totally planned to provide for a variety of compatible uses and common open space and which does not necessarily comply with the subdivision and zoning regulations of the city with respect to lot size, lot coverage, setback, off-street parking, bulk, type of dwelling, density, and other regulations.
[2] Permitted uses in PUD zoned property include inter alia:

(A) The uses permitted within the Planned Unit Development District shall include the following.
(1) Residential units, including single-family attached and detached dwellings, two-family dwellings, and multiple-family dwellings.
* * * * * *
§ 157.176, Casselberry Zoning Code.
[3] The Casselberry Zoning Code does not specifically set forth criteria to be utilized in determining whether the City Council should grant or deny a preliminary development plan but the code does require the Planning and Zoning Commission to consider the following criteria in determining whether it should recommend approval or denial of the proposed development to the City Council. These factors include:

A. Degree of departure of the proposed planned unit development from surrounding residential areas.
B. Compatibility within the planned unit development and relationships with surrounding neighborhoods.
C. Prevention of erosion and degrading of surrounding areas.
D. Provision for future education and recreation facilities, transportation, water supply, sewage disposal, surface drainage, flood control, and soil conservation as shown in the preliminary development plan.
E. The nature, intent, and compatibility of common open space, including provisions for the maintenance and conservation of the common open space.
F. Feasibility and compatibility of specified stages of the preliminary development plan.
G. The planning and zoning commission shall not review code requirements germane to building or building interior. These matters shall be handled by building official staff members who are responsible for permits and code enforcement.
§ 157.188, Casselberry Zoning Code.