James W. GRANT and Delores Grant, Stairs Manufactured Housing, Inc., et al., Plaintiffs-Appellants,

v.

COUNTY OF SEMINOLE, FLORIDA, Defendant-Appellee.

No. 86–3568.

United States Court of Appeals, Eleventh Circuit.

May 27, 1987.

Keith C. Tischler, Jack M. Skelding, Jr., Parker, Skelding, Costigan, McVoy & Labasky, Tallahassee, Fla., for plaintiffs-appellants.

Nikki Clayton, Sanford, Fla., Howard R. Marsee, Richard D. Roggenkamp, Hanna, Marsee, Beik & Voght, Orlando, Fla., for defendant-appellee.

Before GODBOLD and HILL, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.

PER CURIAM:

Plaintiffs challenged, on equal protection and due process grounds, an ordinance of the defendant county which precludes the location of mobile homes in areas which are not zoned for them. They raised a plethora of other claims below, including federal preemption and antitrust, but the dismissal of those claims has not been appealed. At the close of plaintiffs' evidence, the district court entered its findings of fact and conclusions of law and entered a judgment of involuntary dismissal under Fed.R.Civ.P. 41(b). The district court carefully considered the plaintiffs' constitutional claims in a thorough opinion, a copy of which is attached as an appendix to this order. We affirm on the basis of that opinion.

We write briefly, however, to consider the district court's dismissal of plaintiffs' claim that Florida law preempts the county ordinance. This claim was dismissed, along with plaintiffs' federal antitrust and federal preemption claims in a one page memorandum order, which stated that the claims were dismissed "without prejudice and without leave to amend." The order did not specify any reasons for the dismissal.

 While the failure of a lower court to give reasons for its disposition of an action makes review difficult, it does not necessarily preclude affirmance where appropriate reasons for dismissal are readily apparent. *See Horton v. Goose Creek Independent School District,* 690 F.2d 470, 484 (5th Cir.1982) (*per curiam*), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Appellees argue, and we agree, that the district court could properly have declined, in its discretion, to exercise pendent jurisdiction over the state law claim. Exercising pendent jurisdiction over the claim would have required the district court to decide a novel question of state law that was by no means clear cut. Such "needless decisions of state law" are to be avoided. *See Moor v. County of Alameda,* 411 U.S. 693, 715–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1500 (6th Cir.1984) (Respect for state courts as the primary expositors of state law counsels restraint by federal court in announcing new state law principles, a factor appropriately considered by the district court in declining, in its discretion to hear a pendent state law claim.), *vacated on other grounds,* 759 F.2d 546 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985); *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768 (D.C.Cir.1982) (district court abused discretion by exercising pendent jurisdiction over novel and unsettled questions of District of Columbia law). As defendant concedes, the district court's order specifying that the dismissal was "without prejudice" left plaintiffs free to pursue their state law claim in the Florida courts. We agree that those courts, rather than the federal district courts, are the appropriate fora for that claim.

AFFIRMED.

APPENDIX

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This constitutional challenge to the Seminole County Land Development Code was

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

tried before the Court without a jury on July 14 and 15, 1986. At the end of plaintiffs' case, the Court granted defendant's motion for involuntary dismissal in accordance with Rule 41(b) of the Federal Rules of Civil Procedure. Based upon the facts admitted by the parties in their joint pre-trial stipulation, the testimony, and evidence admitted at trial, the Court enters the following findings of fact and conclusions of law pursuant to Rules 41(b) and 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

Defendant County of Seminole, Florida, has the authority to adopt and to enforce zoning regulations pursuant to Article VIII, section 1(f) of the Florida Constitution and Chapter 125 of the Florida Statutes. The Seminole County Board of Commissioners exercised this authority by adopting the subject Land Development Code for Seminole County in accordance with Chapter 65–2274 of the Laws of Florida and Chapter 125 of the Florida Statutes. The Seminole County Land Development Code was enacted to further the public health, safety and welfare of the citizens of Seminole County. Thereunder, mobile or manufactured homes, constructed on a wheeled chassis, are allowed in the following zoned districts: RM–1, single-family mobile home residential district; RM–2, single-family mobile home park district; RM–3 travel trailer parks and campsites; A–1, agricultural district as a special exception; and PUD or Planned Unit Development after approval by Seminole County as part of an overall planned unit development. Mobile or manufactured homes are built to the standards promulgated by the United States Department of Housing and Urban Development (HUD) pursuant to 42 U.S.C. § 5401, *et seq.*, as set forth in 24 C.F.R. §§ 3280–82.

In contrast, manufactured buildings, defined in section 553.36(11) of the Florida Statutes, are factory-built houses, which are transported to the site on which they are to be located. Unlike mobile or manufactured homes, manufactured buildings are not constructed on a chassis. In Florida, manufactured buildings are built to the Southern Standard Building Code applicable to site-built homes, but manufactured buildings are inspected at the factory by the Florida Department of Community Affairs.

Plaintiffs James and Delores Grant lived in a mobile home park in Lake Kathryn Estates in Seminole County, Florida, from 1971 until March, 1986. The Grants owned their mobile home and they paid rent for the lot which they occupied in the mobile home park. Karl and Helen Stairs owned the mobile home park where the Grant plaintiffs lived.

In 1980, plaintiff Stairs Manufactured Housing, Inc. (Stairs), purchased real property in Seminole County, Florida, described as Lot 27, Block A in Seminole Heights subdivision. This lot was located directly across the street from the mobile home park in which the Grants resided. On September 14, 1982, the Grant plaintiffs contracted with plaintiff Stairs for the purchase of Lot 27 and a mobile home to place on the lot. James Grant testified that the Grants never checked the zoning for the lot.

Subsequent to executing the sales agreement between the Grant plaintiffs and plaintiff Stairs, the Grants attempted to obtain permission from Seminole County to place a Brigadier mobile or manufactured home on Lot 27. By letter, dated September 28, 1982, John Dwyer, Land Management Coordinator for the Land Management Division of Seminole County, informed James Grant that he could not place a mobile home on Lot 27 since that lot is zoned R–1A, which district does not permit mobile or manufactured homes under the Land Development Code. The zoning classification R–1A is limited to a "[s]ingle-family dwelling and their customary accessory uses" in the Land Development Code. The Code's definition of "dwelling" specifically precludes mobile homes. Manufactured buildings, however, are permitted in R–1A zones.

James Grant testified that the major difference in a manufactured building and a mobile home in 1982 was the cost, which

was between $8,000.00 and $10,000.00. At that point in time, plaintiff Brigadier Homes, Inc. did not make manufactured buildings. Grant also testified that he preferred mobile homes to manufactured buildings. It was his intention to make the mobile home permanent by placing simulated stone around the base and by bricking the bottom. On the advice of Seminole County that they were not eligible for a variance or special exception to permit siting a mobile home on Lot 27, the Grant plaintiffs never applied for a variance. With the knowledge that they could not place a mobile home on Lot 27, James Grant testified that the Grant plaintiffs could have rescinded their contract with plaintiff Stairs.

James Grant admitted on cross examination that, when the Grant plaintiffs purchased the lot, plaintiff Stairs informed them that plaintiff The Florida Manufactured Housing Association, Inc. had been seeking a case to test zoning laws which precluded mobile homes. The plaintiffs in this case, sharing the common interest in placing mobile homes in areas barred to them by zoning regulations, decided to pursue the matter in this litigation. Lot 27 was purchased in May, 1983, and suit was filed in November, 1983. Grant testified that he wanted the lot "no matter what happened." In mid–1985, the Grant plaintiffs sold their mobile home in Lake Kathryn Estates to plaintiff Florida Manufactured Housing Association. From that time until they moved into their new home in March, 1986, the Grants paid only their lot rent of $132.00 per month to live in Lake Kathryn Estates.

After the Grant plaintiffs purchased Lot 27 in 1983, they improved the property in preparation for habitation. By January, 1986, the Grants had become weary with waiting for their litigation result. Utilizing the floor plan of the Brigadier mobile home that they had desired, the Grants commenced construction of their conventional, site-built home on approximately January 10, 1986. This house was completed and occupied by the Grants in March, 1986. Since that time, the Grant plaintiffs have resided on Lot 27, Laura Street in Seminole County. Located on Laura Street near the Grant's lot and across the street from the mobile home park, there are manufactured buildings on Lots 25, 30 and 31. James Grant admitted that he would object to aesthetically unpleasing designs of mobile homes in the lot adjacent to his and that "all zoning is probably good or it wouldn't be here. . . ."

Plaintiffs presented three expert witnesses essentially to show the comparison of the HUD regulations for mobile homes versus the Southern Building Code regulations for manufactured buildings, and to show public perception of mobile homes and the consequent effect on property value. Fred Cardwell and Earl Ferguson, who testified regarding the regulations comparison, concurred that the safety requirements in the HUD and Southern Building Code regulations are similar and that the differences are slight. Ferguson, however, admitted on cross examination that a recent Gulf Coast hurricane study, had shown a "lesser level of damage" from hurricane-force winds to site-built houses as opposed to mobile homes.

Thomas Nutt-Powell attempted to erode the perception that people have a negative view of mobile homes and of the impact of mobile homes on property value. Nutt-Powell based this proposition on a survey/study that he had overseen in Belmont, New Hampshire during 1983–1986. While admitting that Belmont had no zoning regulations, Nutt-Powell, nevertheless, had concluded that the perception that mobile homes were "second-rate housing for second-rate people" was "utterly unsupportable" and that there was no significant property value impact from abutting mobile homes. Cross examination, however, elicited that Belmont is a semi-rural, shoreline community where, for a portion of the residents, the occupancy is seasonal or second-home. Nutt-Powell also admitted that the general public does view mobile homes as less desirable housing with a negative effect on property value. The metal roof and siding plus the rectangular shape of mobile homes, as opposed to site-built houses, can be perceived as aesthetically unap-

pealing and deleterious to residential areas. Nutt-Powell admitted that not only are there no mobile homes in his neighborhood, but also that he has not appeared before a zoning body in an attempt to allow mobile homes in his neighborhood. He acknowledged that the area in which the Grant plaintiffs lot is located is more intergrated with mobile homes than most areas.

Furthermore, Nutt-Powell admitted that he had no appraisal expertise. He testified that land planners are entitled to consider the appearance of structures and economic impact as well as safety in establishing zoning categories. Mobile homes, by definition, must be an appropriate width and length to travel on roads. Nutt-Powell verified a statement in his book that, because mobile homes are designed to be moved, they are subject to degradation. Adequate securing or "tie down" of mobile homes also is an important concern for withstanding winds, particularly hurricane-force winds in Florida. Finally, Nutt-Powell admitted that there is no one solution to the mobile home situation and that other methods of regulating mobile homes are acceptable.

In this action, plaintiffs challenged the constitutionality of the Seminole County Land Development Code, which does not permit the siting of a mobile or manufactured home in a residential district zoned R–1A. Specifically, plaintiffs claim that this restriction on the location of mobile homes violates their rights to substantive due process and to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiffs assert that the zoning bar to placing mobile homes in R–1A districts is arbitrary, capricious and without rational basis. They sought a declaration that the relevant provisions of the Seminole County Land Development Code are unconstitutional; a permanent injunction prohibiting enforcement; monetary damages; costs; and attorneys' fees pursuant to 42 U.S.C. § 1988. In denying that the pertinent zoning regulations violate plaintiffs' rights to substantive due process and to equal protection, defendant Seminole County contended that the distinctions pertaining to mobile or manufactured homes in the Land Development Code, both on their face and as applied to plaintiffs, are lawful exercises of the broad authority of defendant under state law and are rationally related to achievement of legitimate goals of Seminole County, Florida.

## CONCLUSIONS OF LAW

This action arises under 42 U.S.C. § 1983, and the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(3). The issue before the Court is whether or not the provisions of the Seminole County Land Development Code, which preclude mobile or manufactured homes from residential districts zoned R–1A, violate plaintiffs' Fourteenth Amendment rights to substantive due process and to equal protection. The parties stipulated that the standard for making this constitutional determination is rational basis since a fundamental right or a suspect classification is not involved. *See Farrell v. City of Miami*, 587 F.Supp. 413, 415 (S.D.Fla.1984), *aff'd*, 758 F.2d 658 (11th Cir.1985). Specifically, the parties stipulated that the constitutionally of the zoning regulations depends upon whether or not they are rationally related to the achievement of a legitimate government objective of defendant Seminole County.

The rational basis standard requires that the challenged legislation must have a legitimate public purpose and that the legislation must rationally relate to the end it seeks to achieve. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Defendant Seminole County is empowered to adopt and to enforce zoning regulations pursuant to Article VIII, section 1(f) of the Florida Constitution and Chapter 125 of the Florida Statutes. Furthermore, the parties have stipulated that the Land Development Code was enacted to further the health, safety and welfare of Seminole County citizens. The Court concludes that the Land Development Code was legislated to further legitimate public purposes.

[3] As the parties have stipulated, the Court then must determine whether or not the preclusion of mobile or manufactured homes in residential districts zoned R–1A is rationally related to the goals of the Land Development Code, which are to further the health, safety and welfare of Seminole County citizens. "Zoning provides one of the firmest and most basic of the rights of local control." *Stansberry v. Holmes,* 613 F.2d 1285, 1288 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980). It is apparent to the Court that governmental bodies have the right to set minimum standards for housing in residentially zoned districts, such as the requirement that the structure be placed on permanent footers. The testimony of plaintiffs' experts adduced that debatable issues exist as to mobility, potential for degradation, economic effect on property value and wind vulnerability with respect to mobile or manufactured homes. Plaintiffs have failed to convince the Court that prohibition of mobile or manufactured homes from districts zoned R–1A is not rationally related to achievement of the legitimate governmental objectives of defendant Seminole County. Plaintiffs also have failed to demonstrate that there is no rational basis for the distinction between manufactured homes and manufactured buildings, which are allowed by the Land Development Code in areas zoned R–1A. Furthermore, the Court recognizes that Seminole County has made adequate provision in its zoning classifications for mobile or manufactured homes in park, agricultural and PUD districts, or in a single-family residential district analogous to district R–1A. The Court also notes that the Grant plaintiffs' lot is located directly across from a mobile home park. Their property, therefore, is a buffer zone, which necessarily results from zoning.

It is "not the function of federal district courts to serve as zoning appeal boards...." *Nasser v. City of Homewood,* 671 F.2d 432, 440 (11th Cir.1982) (citing *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 6 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)). The law is well settled that legislated zoning ordinances are permissible, constitutional uses of police power and are not reviewable by district courts unless they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *see Nasser,* 671 F.2d at 440–41; *Couf v. DeBlaker,* 652 F.2d 585, 590 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982); *Stansberry,* 613 F.2d at 1289; *Blackman v. City of Big Sandy, Texas,* 507 F.2d 935, 936 (5th Cir.1975); *South Gwinnett Venture,* 491 F.2d at 7; *Higginbotham v. Barrett,* 473 F.2d 745, 747 (5th Cir.1973). Furthermore, zoning regulations of a quasi-legislative zoning commission are presumed constitutionally valid. *See Nasser,* 671 F.2d at 441; *South Gwinnett Venture,* 491 F.2d at 7; *Farrell,* 587 F.Supp. at 415. The Court concludes that the standards defendant Seminole County utilized in designating zone R–1A as a single-family residential district exclusive of mobile or manufactured homes were not only rationally related to its public health, safety and welfare goals, but also were not arbitrary or unreasonable.

At the close of plaintiffs' case, the Court granted defendant's Rule 41(b) motion for involuntary dismissal. Rule 41(b) of the Federal Rules of Civil Procedure states in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Based upon the facts and the applicable law, the Court determined that plaintiffs had shown no right to relief and that there was no need for defendant Seminole Coun-

ty to present its case. Thus, defendant's motion for involuntary dismissal was appropriately GRANTED as delineated herein.

It is SO ORDERED at Orlando, Florida this 14th day of August, 1986, nunc pro tunc July 15, 1986.

> G. Kendall Sharp /s/
> G. KENDALL SHARP
> United States
> District Judge