FERGUSON, Judge
(dissenting).
On a close examination of the record I am drawn, reluctantly but unavoidably, to conclude that this case was not at all about site plan nonconformance — only about dislike for the prospective new neighbor by a large group of residents.
Long before any lawful reason was advanced to the administrative tribunals as grounds for denying the petitioners a building permit, the actual reason was already a matter of public record. A petition signed by neighboring homeowners,[1] submitted to the Zoning Appeals Board and to the County Commission, stated:
WE THE UNDERSIGNED DO NOT WANT THE SALVATION ARMY TO BUILD ANY STRUCTURES FOR ANY PURPOSES ON THE PROPERTY NORTH OF S.W. 184 STREET BETWEEN S.W. 94 AVENUE AND S.W. 97 AVENUE, DADE COUNTY FLORIDA. [Emphasis added.]
There is otherwise no competent substantial evidence in the record to support the commission’s decision.
In 1974, the Perrine Peters Methodist Church applied for and was granted a special exception to construct a church and related facilities, along with an unusual use permit for a day nursery and a kindergarten to be operated on the property. The site plan called for six separate buildings consisting of a sanctuary, fellowship hall, 424-seat chapel and office. Two separate buildings were designated for unspecified future use. According to a letter of intent, the Methodist Church planned to use its facilities to serve the community with church oriented activities such as Boy Scouts, Girl Scouts, plays, public protestant service classes, bazaars, and indoor and outdoor sports.
In response to the fears of neighbors, the Salvation Army, as the successor owner of the property, promised that it would use the facility exclusively for traditional church and church-related services similar to its church in Hialeah, and proffered an additional declaration that it would not use its Perrine property for drug or alcohol rehabilitation centers, for adult congregate living facilities, for an adolescent treatment center or as a place to feed, clothe, house or otherwise care for the homeless or indigent.
After acquiring the property zoned for church use, Salvation Army representatives met with representatives of the Building and Zoning Department to determine what modifications, if any, were needed to bring its site plan into compliance with the plan earlier approved for the Perrine Methodist Church. Based on a site plan, as modified in accordance with the Building Director’s recommendations, and a declaration of use, the Director of the Building and Zoning Department issued the Salvation Army a building permit.[2]
*614 On March 6, 1986, Mr. Webster, a neighboring homeowner, appealed the Zoning Appeals Board’s decision awarding the permit, contending that the Salvation Army’s site plans did not comply with those approved by the County Commission in 1974. At a public hearing before the Zoning Appeals Board, experts from both the Dade County Building and Zoning Department appeared and testified that the Salvation Army’s site plans were in substantial compliance with the plans approved by the County Commission in 1974. The department recommended denial of the neighbor’s appeal. Neither the appellant-neighbor, nor the other residents appearing with him, presented competent evidence of noncompliance. Instead they voiced objections to the religious organization, and concerns about drug users, bums and derelicts. Mr. Webster:
We don’t intend to allow this facility to invade our lives.
It will probably attract the destitute and outcasts who are the concomitant of the Army. Not only in Dade County but throughout the world and indeed they are inseparable.
On that plea, along with the petition signed by neighbors, the Zoning Appeals Board reversed the decision issuing the Salvation Army a permit to build. Dade County Commissioners succumbed to the same political pressure.
The majority embraces two hypertechnical points from the County’s argument as proof of substantial noncompliance of the Salvation Army’s site plan: (1) transfer of density from one building to another or from one stage of development to another, (2) compatibility of building elevations, renderings and perspectives. Of significance is that both points rely on guidelines established by the Director of Building and Zoning to determine whether a plan for actual development is in substantial compliance with a site plan as administratively approved.
Those guidelines make it clear that an actual plan for development need not “exactly” comply with the site plan — that “substantial compliance” “permits(s) some flexibility.” Applying its own guideline's the Director of Building and Zoning found the Salvation Army’s site plan in substantial compliance.
The only expert called by the opponents was an architect who also resides in the community. She argued, however, that the Salvation Army proposed a usage different than that approved for the Perrine Peters Methodist Church. At the commission hearing, she said:
I submit to you that as an architect registered in Florida, I can take ... your list of substantial compliance and I can abide by every single regulation, every single criteria on this list and I can build a building of virtually any usage because what this document ... fails to do is to take into account or really perhaps it just assumes that there will be no problem; it fails to take in usage.
On the subject of technical compliance she conceded that the Salvation Army building is the same height as the proposed Methodist building. On the question of site plan compliance generally she further conceded, “yes, they have met the letter of substantial compliance.” The criticism, was in essence, a subjective opinion that the building was not as pleasing, aesthetically, as those in the site plan approved for the Perrine Peters Methodist Church.
We have held that objections of residents in surrounding neighborhoods to a proposed construction or development do not alone constitute a sound basis for denying permission to build. B.S. Enterprises, Inc. v. Dade County, 342 So.2d 117 (Fla. 3d DCA 1977). Accord BML Inv. v. City of Casselberry, 476 So.2d 713 (Fla. 5th DCA 1985), rev. denied, 486 So.2d 595 (Fla.1986); Conetta v. City of Sarasota, 400 So.2d 1051 (Fla. 2d DCA 1981); City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974). In a strong statement of the law the City of Apopka court wrote:
Although notice to and hearing of the proponents and opponents of an application for a special exception or other zoning change are essential and all interested parties should be given a full and fair opportunity to express their views it [is] *615 not the function of the Board of County Commissioners to hold a plebiscite on [an] application for [a] special exception.
Writing for the majority in an oft-cited case of this court, Chief Judge Schwartz stated the principle even stronger:
The law ... will not and cannot approve a zoning regulation — or any governmental action adversely affecting the rights of others — which is based on no more than the fact that those who support it have the power to work their will.
Allapattah Community Ass’n, Inc. v. City of Miami, 379 So.2d 387, 394 (Fla. 3d DCA), cert. denied, 386 So.2d 635 (1980).
On this record there is no basis for disagreement. County Commissioners reversed the Building Director’s decision to issue the Salvation Army a building permit solely because that was the desire of vocal neighboring residents.

. Over 700 signatures were appended to the petition submitted to the Zoning Appeals Board. By the time of the hearing before the County Commission the number of signatures had swelled to over 1,000.

. The majority adopts a neighboring homeowner's exaggerated comparison of the Salvation Army's 9,614 square foot building to the size of a football field. A football field, five times larger, has 48,000 square feet.