Cecil D. MOORE, Carol K. Moore, Douglas P. Hooker, & Britta J. Hooker, Plaintiffs,

v.

The CITY OF EDGEWOOD, a municipality operating and existing under the laws of the State of Florida, Dorris Bobber, Linda Brewer, Jerry Brewer, John Pancari, Charles Vasseur, & Mark Bassett, Defendants.

No. 89–0680–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

March 5, 1992.

Miranda F. Fitzgerald, Robert D. Henry, Maguire, Voorhis & Wells, P.A., Orlando, Fla., for plaintiffs.

J. Scott Kirk, Rumberger, Kirk, Caldwell & Wechsler, Orlando, Fla., for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiffs are suing defendants pursuant to 42 U.S.C. § 1983 (1988) for violating plaintiffs' rights to substantive due process and equal protection and for unconstitutionally impairing plaintiffs' right to contract. Plaintiffs moved for partial summary judgment against defendant City of Edgewood (Edgewood). Edgewood responded in opposition to plaintiffs' motion, and with defendants Mark Bassett (Bassett), Charles Vasseur (Vasseur) and John Pancari (Pancari), filed a cross-motion for summary judgment against plaintiffs. Defendants Jerry Brewer, Linda Brewer and Dorris Bobber (Bobber) filed a separate motion for summary judgment against plaintiffs. Plaintiffs filed a single response in opposition to both motions by defendants. Based on a review of the case file and the relevant law, the court grants summary judgment in favor of defendants.

### I. Facts

The City of Edgewood is a Florida municipality of approximately one thousand residents. Edgewood's boundaries extend twelve blocks north to south and three-fourths of a mile east to west, and a four-lane thoroughfare dissects the city. Edgewood is located in Orange County's southern sector.

Edgewood's City Charter provides that the City Council establishes rules and regulations for issuing permits for residential and commercial buildings. The Council may refer matters to a planning and zoning board for consideration and recommendation. The Charter also defines the duties assigned to Edgewood's mayor, city clerk and police chief. At all times relevant to this action, defendants Bassett, Vasseur and Pancari were elected members of Edgewood's City Council; Bobber was the Mayor of Edgewood; Linda Brewer was Edgewood's City Clerk; and Jerry Brewer was Edgewood's Police Chief.

The Edgewood Code of Ordinances provides three zoning classifications for commercial property. For each zone, the Code lists specific permitted uses and specific prohibited uses. The Code provides that the wholesale commercial zone, C–3, is especially adapted for wholesale distribution and light manufacturing. Because the zoning districts are cumulative, the uses permitted in C–3 include the uses permitted in the two less intensive commercial zones. Some of the uses permitted under C–3 zoning are medical clinics; professional offices; hospitals; public institutions such as community centers, libraries and museums; bowling alleys, skating rinks and billiard parlors, when enclosed in a soundproof building; veterinary hospitals and kennels, when confined in a structure; go-cart tracks; enclosed machine shops; mechanical garages; and welding shops. Under the C–3 permitted uses, the Code authorizes the City Council to determine whether uses not specifically included in the Code provision are similar to the listed permitted uses and conform to the purpose and intent of the C–3 zone.

Plaintiffs Cecil Moore and Douglas Hooker formed a partnership, Hooker–Moore Properties (Hooker–Moore), which owns property in the City of Edgewood located on Orange Avenue and zoned for C–3 uses. Hooker–Moore built two buildings on the property, a warehouse and a showroom. In June 1989, Hooker–Moore contracted to lease the showroom to the Orange County Sheriff's Department (Sheriff's Department). Under the contract, the Sheriff's Department could use the premises for any business activity permitted under the present zoning regulations. The Sheriff's Department planned to use the showroom for a permanent testing facility for driving under the influence (DUI) offenders.

Hooker–Moore's authorized agent submitted an application for a building permit to make modifications necessary to convert the showroom into a DUI testing facility to

Linda Brewer, as City Clerk. Linda Brewer refused to issue a permit because the Code did not list DUI testing facilities as a C–3 permitted use. At Mayor Bobber's request, the chairman of Edgewood's Planning and Zoning Board placed the application on the Board's meeting agenda to gather information about the proposed use. Cecil Moore and representatives from the Sheriff's Department attended the meeting.[1] One representative explained that the facility was not a substation but a facility for testing and compiling statistics, and that the Sheriff's Department chose the site for its proximity to other agencies. Another representative explained that the law enforcement officers would bring arrestees to the facilities, keep them in a waiting room, test their alcohol level, and either transport them to a booking office or return them to their cars. He estimated that the operators of the facility would perform approximately one hundred to one hundred fifty tests per month and that the peak times of business would be between midnight and three a.m. on Thursdays and Fridays. Although plaintiffs compared the proposed use to mobile DUI testing units, they made no comparison to an existing permanent DUI facility. The City Attorney explained that because the Code authorizes the City Council to determine similar uses, the Board's decision would not be binding on the City Council. At the end of the meeting, the chairman summarized the members' positions as two members found that the DUI testing facility conformed with C–3 uses and one member disagreed. Linda Brewer, as City Clerk, prepared the minutes from the meeting.

On July 11, 1989, the City Council met for its monthly meeting. Four of the five councilmembers attended the meeting. The members received copies of the minutes from the Planning and Zoning Board meeting. Because plaintiffs' attorney believed that the minutes omitted the Board's two-one vote, she gave the councilmembers copies of the pertinent pages from a transcript prepared by a court reporter at the Board meeting. At the Council meeting,

plaintiffs' attorney discussed the similar use provision and compared the proposed facility's impact to the impact of specifically permitted C–3 uses. An expert testified that the traffic generated by the permanent DUI testing facility would be no greater than the traffic generated by the specifically permitted C–3 uses. A representative from the Sheriff's Department gave a detailed explanation of the current operation of two mobile DUI testing units and answered questions about the proposed permanent DUI testing facility.

In response to the presentation, councilmembers expressed concerns about the facility detaining people against their will and increased police traffic. One councilmember questioned the reliability of the Sheriff's Department's estimated number of tests because the mobile testing units would be moved away from the Edgewood area. Thus, the Edgewood facility would receive the majority of the DUI cases in Orange County's southern sector even though the South Orange Blossom Trail area, outside Edgewood, reports most of the DUI offenses in the southern sector. Another member stated that he lived near the site where a mobile unit is occasionally located and that the mobile unit did not cause a noise problem. At the end of the meeting, two members voted that the DUI testing facility was a similar use and two disagreed. The tie vote required a special meeting of the full City Council.

The full City Council met on July 13, 1989. Plaintiffs' attorney made a presentation and explained that the members could not rely solely on citizen input to make their decisions. A representative from the Orange County Planning and Zoning Board characterized the proposed facility as an office and medical testing laboratory and noted that Orange County allows mobile DUI facilities in less intensive commercial zones. Citizens expressed their concerns about the release of arrestees and the difference between a permanent facility and mobile units. A resident highway patrol officer confirmed plaintiffs' claim that the

---

1. By joint motion, the parties stipulated to the court's use of transcripts from the Planning and

Zoning Board and City Council meetings. Doc. 49.

law prohibits the release of arrestees from DUI facilities. Councilmembers questioned the late business hours, the boisterous nature of DUI arrestees, and the noise in the facility's detention area. At the end of the meeting, the Council voted three to two that the proposed DUI testing facility was not a similar use in a C–3 zone. Because a governmental entity proposed the facility, the Council also determined whether any overriding public interest outweighed the Council's decision. The Council voted three to two that no overriding public interest existed. Plaintiffs' building permit was denied and the Sheriff's Department terminated its lease with Hooker–Moore.

Councilmembers Pancari, Bassett and Vasseur voted against the proposed use. In depositions, both Pancari and Bassett stated that they relied on citizen input when they voted but also considered other grounds for opposing the facility. Vasseur died before being deposed. Plaintiffs presented evidence suggesting that Pancari, Bassett, Vasseur, Bobber, Linda Brewer, and Jerry Brewer held personal and political animosity toward plaintiffs and the Sheriff's Department.

## II. Legal Discussion

### A. *Standards for Summary Judgment*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, all inferences drawn from the underlying facts are considered in a light most favorable to the party opposing the motion, and all reasonable doubts are resolved against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party who bears the burden of proof on the issue at trial must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions on file that designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

### B. *Substantive Due Process*

■ The Eleventh Circuit applies a twofold test to determine whether a zoning regulation violates substantive due process in the context of § 1983. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir.1989). First, plaintiffs must show that they were deprived of a constitutionally protected interest, and second, the deprivation must be the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Id.*

### 1. Constitutionally Protected Property Interest.

■ To establish a constitutionally protected property interest, plaintiffs must prove that the City Council lacked discretion in determining whether to issue a building permit and plaintiffs fulfilled the similar-use requirements. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989); *Corn v. City of Lauderdale Lakes*, 771 F.Supp. 1557, 1568 (S.D.Fla.1991). Plain-

tiffs rely on the decision in *Corn* to show that the City Council lacked discretion to refuse their building permit. In *Corn*, the federal court held that a municipality lacks discretion to deny a proposed use when a state court determines that a plaintiff's rights vested under the original code which specifically allowed the plaintiff's proposed use. *Corn*, 771 F.Supp. at 1568. Unlike the facts in *Corn*, the facts in this case show that the Edgewood Code never specifically allowed DUI testing facilities in C–3 zones. Instead, the Edgewood Code grants the City Council authority to determine whether a proposed use is similar to the specifically permitted uses and promotes the purpose and intent of the C–3 zone. Because the Code does not define which factors the City Council should consider and states the purpose and intent of the C–3 zone in general terms, the court finds that the Code allows the City Council a significant degree of discretion in determining whether a proposed use is similar to the permitted uses. Accordingly, plaintiffs fail to show that the City Council lacked discretion to deny their building permit, and thus, fail to establish a constitutionally protected property interest.

## 2. Abuse of Government Power.

Even if plaintiffs could establish a constitutionally protected property interest, plaintiffs must also show that the City Council's decisions amounted to a constitutional violation. *See Spence*, 873 F.2d at 262 (stressing that courts should be circumspect in determining that constitutional rights are violated in quarrels over zoning decisions). Plaintiffs state several grounds to challenge the council members' decisions that the proposed DUI testing facility was not a similar use and that no overriding public benefit existed. First, plaintiffs contend that City Council decisions are subject to the strict scrutiny which courts apply to quasi-judicial actions. Although some state courts classify land use decisions that apply to a particular piece of property as quasi-judicial the Eleventh Circuit has repeatedly applied the more deferential quasi-legislative standard of review to both zoning ordinances and the application of

zoning ordinances. *Greenbriar*, 881 F.2d at 1579; *Spence*, 873 F.2d at 258; *DeSisto College, Inc. v. Town of Howey-in-the-Hills*, 706 F.Supp. 1479, 1499 (M.D.Fla.), *aff'd*, 888 F.2d 766 (11th Cir.1989); *see also South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). Thus, the court need only determine whether the City Council's decisions were clearly arbitrary and unreasonable, having no substantial relationship to the public welfare. *Grant v. Seminole County*, 817 F.2d 731, 736 (11th Cir.1987). Furthermore, City Council decisions are presumed constitutionally valid. *Id.*

Plaintiffs also contend that the City Council decisions were unconstitutional because Pancari and Bassett relied on citizen input to make their decisions and did not conduct independent investigations. Constitutional due process does not require the councilmembers to ignore their constituents' preferences and conduct an independent investigation of the merits. Instead, the Eleventh Circuit recognizes that councilmembers who evaluate proposals in light of their constituents' preferences do not necessarily overlook the merits of the proposal. *Greenbriar*, 881 F.2d at 1579; *cf. Corn*, 771 F.Supp. at 1569 (finding a city council's action arbitrary and capricious where it undertook no independent evaluation and acted for purely political reasons). The record reveals that the councilmembers relied on the minutes from the Planning and Zoning Board meeting and evidence that plaintiffs presented to the councilmembers. Because the evidence shows that the councilmembers did not rely solely on citizen input and individually assessed the merits of the proposed use, plaintiffs cannot succeed on these grounds.

Plaintiffs next claim that the City Council's decisions are constitutionally infirm because the councilmembers lacked substantial and competent evidence to support their position against the DUI testing facility. As authority, plaintiffs cite state-court decisions applying certiorari review to local zoning decisions, which state courts characterize as administrative actions.

*BML Invs. v. City of Casselberry*, 476 So.2d 713, 715 (Fla.Dist.Ct.Ap.1985); *Conetta v. City of Sarasota*, 400 So.2d 1051, 1052 (Fla.Dist.Ct.App.1981). In contrast, federal claims under § 1983 are subject to rationality review which depends on whether at least one plausible legitimate government purpose supports the council members' decisions. *DeSisto College*, 706 F.Supp. at 1502–03. Accordingly, the amount of additional evidence which supports the councilmembers' decisions and their actual reasons are irrelevant. *Id.*

■ Finally, plaintiffs contend that no legitimate government purpose existed to deny the building permit. At the Planning and Zoning Board and City Council meetings, plaintiffs compared the proposed DUI testing facility to uses specifically permitted in C–3 districts, such as offices and medical clinics. Although some aspects of the DUI facility are comparable, distinctions also exist. Plaintiffs' original floor plan designated the waiting rooms as holding cells and the Sheriff's Department admitted that it would detain arrestees in the building. Holding people against their will creates a potential for escape. The Sheriff's Department could not guarantee that arrestees would not escape. Furthermore, although the facility would be available to several arresting agencies, plaintiffs provided evidence of only the Sheriff's Department's policies. Activity at the DUI facility would peak between midnight and three a.m., and DUI arrestees are occasionally loud and boisterous. The combination of these factors distinguishes the proposed use from the permitted uses and creates a legitimate concern that the noise will disturb residents in the early morning hours. The permanent nature of the facility distinguishes it from the mobile units because the bulk of the southern sector DUI arrestees would be brought to the Edgewood facility on a continuous basis. Because these distinguishing factors relate to legitimate concerns about the quality of life in Edgewood, plaintiffs fail to show that the councilmembers' similar-use decision was arbitrary and capricious. *Id.* at 1500.

■ Similarly, plaintiffs fail to show that the council members' findings of no overriding public benefit were arbitrary and capricious. Florida law required the City Council to determine whether the Sheriff's Department, as a governmental agency seeking to use the land contrary to the applicable zoning regulations, proved that the public interest favoring the proposed use outweighs the factors against the use. *City of Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc.*, 322 So.2d 571, 578–79 (Fla.Dist.Ct.App.1975), *aff'd*, 332 So.2d 610 (Fla.1976). Although the evidence presented to the City Council reveals that a permanent DUI testing facility would benefit the public, those benefits do not necessarily outweigh the City Council's concerns about the proposed location of the facility. In addition to the Sheriff's Department legitimate reasons for choosing the Edgewood site, the City Council also considered evidence that the South Orange Blossom Trail area reports the bulk of the DUI offenses in the southern sector. The City Council could rationally conclude that the Sheriff's Department could provide comparable benefits to the public at another location. Accordingly, the court finds that a rational basis exists for the councilmembers to disagree with plaintiffs and find that the diminished benefits do not outweigh the security and noise concerns discussed above. *See Greenbriar*, 881 F.2d at 1579–80. Because the court finds that the City Council's decisions bear a rational relation to legitimate government objectives, the court cannot conduct a further evaluation of the merits and substitute its judgment for that of the City Council. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469–70, 101 S.Ct. 715, 726–27, 66 L.Ed.2d 659 (1981) (finding a state court erred in substituting its evaluation of legislative facts for that of the legislature); *see also Grant*, 817 F.2d at 736 (noting that federal courts do not serve as zoning appeal boards).

C. *Equal Protection*

■ Plaintiffs contend that defendants' actions violated their equal protection rights under the Fourteenth Amendment.

The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike. *Spence*, 873 F.2d at 261. In this case, plaintiffs have shown no one similarly situated who has been treated more favorably. The record is void of the City Council's treatment of other proposed similar uses. Further, even if plaintiffs are similarly situated with the property owners who fall within the specifically permitted uses, plaintiffs fail show the City Council's decision was not rationally related to a legitimate government interest, as discussed above. *DeSisto College*, 706 F.Supp. at 1506 (rejecting substantive due process and equal protection claims based on the same rationality review analysis). Thus, plaintiffs fail to state a claim that defendants violated their rights to equal protection.

### D. *Impairment of Contract*

▮ Plaintiffs allege that the City Council's action caused the Sheriff's Department to terminate its contract with plaintiffs. Yet, the evidence reveals that the contract was not contingent on the City Council's approval of plaintiffs' building permit. The contract merely stated that the Sheriff's Department could use the property for any use permitted under the Edgewood Code. The City Council's similar use determination did not change the permitted uses in C–3 districts, and thus, did not change any specific contractual obligations. Accordingly, the court finds that the City Council did not violate the contract clause. *City of Atlanta v. Metropolitan Atlanta Transit Auth.*, 636 F.2d 1084, 1091 (5th Cir. Unit B 1981) (citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

### III. Conclusion

The court finds that the undisputed facts, as well as the reasonable inferences drawn from the facts, do not establish a genuine issue of material fact that would justify bringing this lawsuit to trial. Plaintiffs' substantive due process and equal protection claims fail because defendants actions were rationally related to a legitimate government purpose. Further, defendants did not impair plaintiffs' contractual obligations. Accordingly, the court GRANTS defendants' motions for summary judgment (Docs. 44 & 46) and DENIES plaintiffs' motion for summary judgment. (Doc. 41) The court GRANTS the parties' joint motion for the court to consider transcripts from the Planning and Zoning Board and City Council meetings. (Doc. 49)

It is SO ORDERED.