922 F.2d 1536
 EXECUTIVE 100, INC., a Florida Corporation, Kings Ridge 239,
Inc., a Florida Corporation, Plaintiffs-Appellants,
v.
MARTIN COUNTY, a Political Subdivision of the State of
Florida, et al., Defendants-Appellees.
 No. 89-5629.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 7, 1991.
 
 Elaine M. Catsos, North Palm Beach, Fla., for plaintiffs-appellants.
 Stephen C. Page, Lee B. David, Gunster, Yoakley & Stewart, P.A., Stuart, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and CLARK, Circuit Judges, and BROWN*, Senior District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case arises on appeal from the district court's order of May 23, 1988 dismissing the plaintiffs' complaint as premature.
 
 I. FACTS
 A. Background
 
 2
 The plaintiffs, Executive 100, Inc. ("Executive") and Kings Ridge 239, Inc. ("Kings Ridge") (referred to together as the "plaintiffs"), purchased parcels of land in Martin County Florida. Executive's parcel is bordered on the south by County Road 714, and on the east by a new segment of Interstate 95 completed in 1987. Kings Ridge's parcel is between the Florida Turnpike and the new segment of Interstate 95.
 
 
 3
 The completion of Interstate 95 has added significantly to the development value of both parcels. In order to capitalize on this new value, both plaintiffs filed applications for amendments to the Martin County Comprehensive Land Use Plan to change the zoning of their parcels from agricultural/rural ranchette[1] to industrial. The County Local Planning Agency reviewed the applications and passed them on to the Board of County Commissioners of Martin County (the "Board"), which denied the zoning changes.
 
 
 4
 The Board, however, did grant an amendment to the Martin County Comprehensive Land Use Plan to change the zoning of two parcels along Interstate 95, owned by interests other than the plaintiffs, to industrial. One parcel was located at the interchange of Interstate 95 and County Road 76, and the other parcel was located at Interstate 95 and County Road 708.
 
 B. Proceedings in the District Court
 
 5
 The plaintiffs filed this suit under 42 U.S.C.A. Sec. 1983, alleging ten counts: five on behalf of Executive, and an identical five on behalf of Kings Ridge.[2] Counts one and six alleged that the Board, by denying the rezoning requests, deprived the plaintiffs of property without due process of law. Counts two and seven alleged that the Board's actions violated plaintiffs' equal protection rights. Counts three and eight alleged that the agricultural/rural ranchette zoning regulation is unreasonable, arbitrary and capricious. Counts four and nine alleged that the prohibition of industrial use was so unrelated to the public welfare that it was a confiscation of property. Counts five and ten alleged that the Board wrongfully interfered with plaintiffs' prospective economic advantage.
 
 
 6
 The Board moved to dismiss the complaint on the grounds of legislative immunity and on the grounds that the plaintiffs' complaint was unripe. The district court found that the complaint failed to allege specific facts sufficient to preclude the application of legislative immunity and dismissed all of the claims against the defendants in their individual capacities. The court also found that the plaintiffs had failed to exhaust state inverse condemnation proceedings that were available under First English Evangelical Lutheran Church v. Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), and Joint Ventures, Inc. v. Dept. of Transp., 563 So.2d 622, 628 (Fla.1990).[3] The court, therefore, dismissed all of the counts as unripe.[4] In this appeal, we first consider whether the district court erred in holding that the individual defendants were entitled to legislative immunity with respect to all claims in the complaint. We then consider whether the district court erred in finding that the plaintiffs' complaint was premature.
 
 II. STANDARD OF REVIEW
 
 7
 This Court must review de novo the district court's order dismissing the complaint. See Luckey v. Harris, 860 F.2d 1012, 1016-17 (11th Cir.1988); Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir.1986). Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint on the basis of a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The motion to dismiss should be denied, however, unless it appears beyond all doubt that the plaintiffs can prove no set of facts that would entitle them to relief. Luckey, 860 F.2d at 1016. The allegations in the plaintiffs' complaint must be taken as true for purposes of the motion to dismiss. See id.
 
 III. ANALYSIS
 A. Legislative Immunity
 
 8
 The plaintiffs argue that the district court erred in dismissing their claims against the Board members in their individual capacities because the plaintiffs claimed prospective injunctive relief as well as monetary damages.[5] The Board argues that the complaint did not seek injunctive relief against the Board members in their individual capacities. The Board also argues that claims for injunctive relief may be brought against government officials only in their official capacities, and not in their individual capacities, where the relief sought is an order concerning the defendants' official duties.
 
 
 9
 Local legislators are entitled to legislative immunity in this Circuit. DeSisto College v. Line, 888 F.2d 755, 764-65 (11th Cir.1989). A defendant who enjoys official immunity from suits for damages may, however, be subject to suits for prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1980-81, 80 L.Ed.2d 565 (1984). Nevertheless, in the present case, none of the plaintiffs' counts ask for an injunction against an individual Board member.[6] Accordingly, the plaintiffs do not ask for injunctive relief against the Board members in their individual capacities. The plaintiffs' argument, therefore, is baseless.[7]
 
 B. Ripeness of Complaint
 
 10
 A plaintiff seeking to challenge a local government's refusal to rezone his property may bring four different causes of action. Eide v. Sarasota County, 908 F.2d 716, at 719-23 (11th Cir.1990). First, a plaintiff may claim that the zoning applied to his land constitutes a taking of his property without just compensation in contravention of the Fifth Amendment. Id. at 721 (labeling this claim a "just compensation claim").[8] Second, a plaintiff may claim that the zoning applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law. Id. at 721 (labeling this claim a "due process takings claim"). Third, a plaintiff may argue that the regulation, either on its face or as applied, is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, and therefore is an invalid exercise of the police power. Id. at 721-22 (labeling this claim as an "arbitrary and capricious due process claim").[9] Finally, a plaintiff may claim that the zoning denies him equal protection of the laws, either because it treats a suspect class differently from others, because it affects a fundamental right, or because it treats a non-suspect class differently and is not rationally related to a legitimate government purpose. Id. at 722 (labeling this an "equal protection" claim).[10]
 
 1. Counts One and Six of Complaint
 
 11
 The Board asserts that the plaintiffs' claims are not ripe because the plaintiffs have not proposed alternative zoning so as to reach a final determination of the nature and extent of development that the Board will permit on the plaintiffs' land. In MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), the Supreme Court stated that "[o]ur cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." Id. at 349, 106 S.Ct. at 2567. In MacDonald, the Court refused to hear the plaintiff's just compensation claim after its first development plan was rebuffed because the state courts had "le[ft] open the possibility that some development [would] be permitted, and ... le[ft] [the Court] in doubt regarding the antecedent question whether appellant's property ha[d] been taken." Id. at 352-53, 106 S.Ct. at 2567-68. Accordingly, the Court held that the plaintiff's just compensation claim would not be ripe until the plaintiff reapplied for a permit to pursue a less ambitious development plan. Id. at 352-53 n. 9, 106 S.Ct. at 2568 n. 9.
 
 
 12
 Counts one and six of the plaintiffs' complaint alleged that the Board deprived the plaintiffs of property without due process of law. These claims are due process takings claims.[11] In order for these claims to be ripe for adjudication, the plaintiffs must obtain a final decision regarding the application of the zoning ordinances to their property, including denial of variance applications.[12] Eide, at 721, 720; MacDonald, 477 U.S. at 352-53, 106 S.Ct. at 2567-68. In the present case, the plaintiffs do not allege that they have sought variances or pursued alternative, less ambitious development plans. Accordingly, the plaintiffs' due process takings claims (counts one and six) are not ripe and should be dismissed.
 
 2. Counts Two and Seven of Complaint
 
 13
 Counts two and seven of plaintiffs' complaint allege that the Board's actions violated plaintiffs' equal protection rights. These claims, which are based on allegations that the Board's action had no rational basis, are not barred by MacDonald 's reapplication requirement. See Eide, at 724 n. 12. In order to establish the ripeness of their equal protection claims, the plaintiffs must show only that the Board has made a final decision denying commercial zoning. Eide, at 724 n. 12, 725 n. 16.
 
 
 14
 In cases involving economic regulation, the courts apply the rational basis test to regulations challenged under the Equal Protection Clause. Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Eide, at 722. Legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The plaintiffs allege that the defendants treated them differently from other similarly situated landowners along Interstate 95 without any reasonable basis. Accordingly, the plaintiffs state an as applied equal protection claim. These claims (counts two and seven) should continue.
 
 3. Counts Three and Eight of Complaint
 
 15
 Counts three and eight of the plaintiffs' complaint allege that the Board's actions were arbitrary and capricious. This Court has stated that the reapplication requirement of MacDonald has no bearing on as applied arbitrary and capricious due process claims. Eide, at 725 n. 16. Accordingly, the plaintiffs' as applied arbitrary and capricious due process claims (counts three and eight) are not barred by MacDonald.
 
 
 16
 The test in this Circuit as to whether there has been a violation of due process in the context of section 1983 has two prongs. First, the court must determine whether there has been a deprivation of a constitutionally protected interest. Second, the court must determine whether the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. Greenbriar Ltd. v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir.1989). A deprivation is of constitutional stature if it is undertaken for improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis. Id. In the zoning context, the issue is whether the Board's action bore any substantial relation to the public welfare. Id.
 
 
 17
 On the first prong, the plaintiffs allege that the value of their property has been diminished significantly by the Board's actions in denying their requests for rezoning. They also allege harm "including the denial to the Plaintiff[s] of the opportunity otherwise available to [them] to sell [their] property for industrial use." If the plaintiffs prove that this diminution was more than a simple fluctuation in value incident to governmental decisionmaking, which is a noncompensable hazard of ownership, see First Lutheran Church, 482 U.S. at 320, 107 S.Ct. at 2388; Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 198-99, 105 S.Ct. 3108, 3122-23, 87 L.Ed.2d 126 (1985) (citing Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 414, 43 S.Ct. 158, 67 L.Ed. 322 (1922)), then they will have shown a deprivation of a property right. On the second prong, the plaintiffs allege that the Board's actions were unrelated to the public welfare because their land is not suitable for its present zoning status. Accordingly, the plaintiffs' complaint states as applied arbitrary and capricious due process claims. These counts (three and eight) should proceed.
 
 4. Counts Four and Nine of Complaint
 
 18
 Counts four and nine of the plaintiffs' complaint allege that the Board's actions amounted to a confiscation of property. A claim that a government regulation effects a taking of property without just compensation is not ripe until the government entity charged with implementing the regulation has made a final decision regarding the application of the regulation to the property at issue. Williamson County, 473 U.S. at 186, 105 S.Ct. at 3116; Eide, at 720. Moreover, if the government has provided an adequate process for the property owner to obtain compensation, and if resort to that process yields just compensation, then the owner has no just compensation claim. Williamson County, 473 U.S. at 194-95, 105 S.Ct. at 3120-21. Reverse condemnation proceedings are one procedure for pursuing just compensation. Id. at 196-97, 105 S.Ct. at 3121-22.
 
 
 19
 In First Lutheran Church, the Supreme Court held that when a state regulation temporarily deprives a property owner of all use of his property, the state must provide compensation under the just compensation clause. First Lutheran Church, 482 U.S. at 315, 107 S.Ct. at 2386. The Florida courts have recognized that under First Lutheran Church property owners have the right to bring reverse condemnation proceedings seeking compensation for regulatory takings. Joint Ventures, at 622. Accordingly, under Williamson County the plaintiffs' claims that the government has confiscated property without just compensation (counts four and nine) are not ripe for adjudication because the plaintiffs have not pursued compensation through a reverse condemnation proceeding. Williamson County, 473 U.S. at 195, 105 S.Ct. at 3121 ("a property owner has not suffered a violation of the just compensation clause until the owner has unsuccessfully attempted to obtain just compensation...."); see also Anthony v. Franklin County, 799 F.2d 681, 684 (11th Cir.1986).[13]
 
 5. Counts Five and Ten of Complaint
 
 20
 Finally, counts five and ten of the plaintiffs' complaint allege that the Board wrongfully interfered with their prospective economic advantage. Under Florida law, tortious interference with an advantageous relationship consists of the following elements: (1) the existence of an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff. Lake Gateway Motor Inns v Matt's Sunshine Gift Shops, Inc., 361 So.2d 769, 771 (Fla.Dist.Ct.App.1978). Plaintiffs allege that they had "prospective advantageous business relationships with certain potential purchasers...." They also allege that the Board "told potential purchasers of the subject property that the subject property could be used, now and in the future only for [residential (Executive) or] agricultural [ (Kings Ridge) ] purposes." Plaintiffs also allege damage. If the plaintiffs should prove that the Board intentionally and unjustifiably interfered with the plaintiffs' prospective business relationship, causing the plaintiffs damage, they will prevail on these claims. Accordingly, these claims (counts five and ten) should continue.
 
 IV. CONCLUSION
 
 21
 We AFFIRM the district court's dismissal of the claims against the Board members in their individual capacities. We also AFFIRM the district court's dismissal of the plaintiffs' due process takings claims (counts one and six) and just compensation claims (counts four and nine). We REVERSE the district court's dismissal of the plaintiffs' as applied equal protection claims (counts two and seven), as applied arbitrary and capricious due process claims (counts three and eight), and tort claims (counts five and ten).
 
 
 22
 CLARK, Circuit Judge, concurring in part, and dissenting in part:
 
 I. INTRODUCTION
 
 23
 "Zoning provides one of the firmest and most basic of the rights of local control."[1] And, as this court has recognized, it is "not the function of federal district courts to serve as zoning appeals boards...."[2]
 
 
 24
 The gravamen of the court's error in permitting appellants' suit against the county to go forward is its willingness to engage in premature review of the actions of the local zoning authority based on almost nonexistent factual allegations of a constitutional dimension. It cannot be the case that the role of the federal courts is to review decisions of local zoning authorities where the complaining parties have failed to plead, in a well-pleaded complaint, a substantial federal question. The law governing federal subject matter jurisdiction simply does not permit such exercise of authority. Even as a practical matter, "[a]vailability of federal review of every zoning decision would only serve to further congest an already overburdened federal court system."[3]
 
 
 25
 On the issue of ripeness, it is obvious that if we affirm the skeletal pleadings in this case, we are opening the doors of the federal courts to review virtually all Florida zoning rulings, whether or not final and definitive for purposes of establishing ripeness.[4] Therefore, I would hold with the seventh, ninth, and tenth circuits that the Williamson County and MacDonald ripeness test applies with equal force to as-applied arbitrary and capricious due process[5] and equal protection claims. I would dismiss without prejudice all counts of appellants' complaint for failure sufficiently to allege facts establishing either a constitutional issue or ripeness.
 
 
 26
 In reaching this conclusion, I recognize that under our liberal pleading requirements, a complaint should not be dismissed unless the plaintiff can prove no set of facts that would entitle her to relief.[6] However, it is essential to plead sufficient jurisdictional facts,[7] and the complaint in this case completely fails to satisfy this threshold requirement. Based upon the law of this circuit and the failure of appellants to allege facts sufficient to raise a substantial federal question or to establish ripeness, it is clear that appellants have established no right to relief. Therefore, I would affirm on jurisdictional grounds the district court's dismissal of the complaint.
 
 II. FACTS
 
 27
 Because I disagree with the majority's rendering of the facts, and its determination of the threshold questions 1) whether appellants have pleaded a substantial federal question and 2) whether appellants' equal protection and arbitrary and capricious due process claims are ripe, I undertake a separate review of those facts as set forth by the appellants in their pleadings. On review of the district court's dismissal of the complaint for failure to state a claim, appellants' allegations are regarded as true.[8]
 
 
 28
 On April 1, 1982, Martin County enacted a comprehensive land use plan (Comprehensive Plan or the Plan) setting forth land use designations for all property within Martin County. The Plan contained an amendment procedure permitting property owners to apply for changes in land use designation. A rezoning application must be filed with any amendment sought.
 
 
 29
 On July 17, 1986, appellant Executive 100 purchased property in Martin County at the northwest corner of the intersection of Interstate 95 and County Road 714. At the time appellant purchased this property, it was zoned rural ranchette, a residential designation permitting one unit per five acres. On January 23, 1985, appellant King's Ridge 239, Inc. (King's Ridge) also purchased property in Martin County. Its property, located between the Florida Turnpike and Interstate 95 at the intersection of County Road 708, was zoned agricultural when purchased. Significantly, then, pursuant to Martin County's Comprehensive Plan, appellants' properties were zoned rural ranchette and agricultural when purchased in early 1985 and 1986 and remain so today.
 
 
 30
 In September 1987, Executive 100 applied for an amendment to the Comprehensive Plan to change its zoning designation from rural ranchette to light industrial. At the same time, King's Ridge applied for an amendment to the Plan to have its property rezoned from agricultural to industrial. Appellants each filed the required rezoning application. The Martin County Planning and Zoning Board and the Martin County Commission denied appellants' applications. Appellants do not allege that they ever reapplied for less ambitious rezoning or, as an alternative to rezoning, sought a greater density allowance or variances from the Comprehensive Plan. They claim only that no other variance or exception procedure exists through which they can urge reconsideration.
 
 
 31
 Appellants, in their complaint, allege a violation of 42 U.S.C. Sec. 1983 and the Fourteenth Amendment. They claim, generally, that the value of their properties has been significantly diminished and that Martin County's actions have intimidated potential purchasers from negotiating with appellants for the purchase of the property that is the subject of this action. On their equal protection claims, counts two and seven, they allege that "the Defendants have permitted the owners of other properties, similarly situated in all material respects to the subject property, to develop their properties for non-residential purposes."[9] However, as discussed below, appellants do not allege how these other properties are, in fact, similarly situated or whether the "permitted" non-residential zoning occurred prior to the April 1982 adoption of the Comprehensive Plan.
 
 
 32
 In claiming an arbitrary and capricious denial of due process, counts three and eight, appellants allege that
 
 
 33
 precluding industrial use of the subject property is arbitrary and unreasonable, has no reasonably debatable relationship to the public health, welfare, safety or morals, is inconsistent with surrounding areas and uses and is more strict or severe than necessary.[10]
 
 
 34
 They contend, without elaboration, that "because of its location, size and shape, the subject property is unsuitable for use for residential purposes."[11]
 
 
 35
 Appellants also allege that until this controversy is resolved, they cannot use, develop or sell the subject properties.[12] However, it is unclear from their pleadings how this could be true. The property is zoned agricultural and rural ranchette and was purchased as zoned. There is no allegation as to how the land became unsuitable or impossible to develop between the time it was purchased and the present time. Nor do appellants allege that defendant Martin County prevented them from developing their property consistent with zoning existing at the time of purchase.
 
 
 36
 Additional facts, pertinent to specific allegations in the complaint, are set forth below.
 
 III. DISCUSSION
 
 37
 A. Failure to Plead a Substantial Federal Question.
 
 
 38
 The initial question raised on appeal, yet ignored by the court, is whether appellants have alleged a federal question sufficient to invoke federal jurisdiction. "In this regard, a liberal standard guides the trial court in determining whether the question is substantial enough to invoke federal jurisdiction.... A complaint should be dismissed only where the federal question is so 'unsubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid in its merits as not to involve a federal controversy.' "[13] Because I agree with the majority that appellants' due process takings and just compensation claims are not ripe, I address the substantiality of the federal question raised only with regard to the arbitrary and capricious due process and equal protection claims.
 
 
 39
 1. As Applied Equal Protection Claim. Appellants, in claiming a denial of equal protection, allege unequal administration of a facially neutral zoning plan.[14] They claim that appellees intentionally discriminated against them and in favor of other similarly situated property owners in redesignating those similarly situated properties for non-residential use while denying appellants' applications for similar changes in zoning.[15]
 
 
 40
 However, a more careful reading of the complaint plainly reveals that appellants have alleged no facts even remotely suggesting how appellants and other landowners were, in fact, similarly situated prior to rezoning by the zoning authority of property other than that owned by appellants. Indeed, the only description of the similarity of the parcels in question in relation to other properties is that they are adjacent to Interstate 95. The mere allegation that other landowners are "similarly situated in all material respects" simply cannot, by any stretch of the imagination, constitute a well-pleaded complaint under the Equal Protection Clause of the Fourteenth Amendment.
 
 
 41
 Indeed, nowhere in the complaint do appellants allege a change as drastic as that at issue here was permitted on similarly situated properties; that is, that property zoned rural ranchette or agricultural under the county's Comprehensive Plan was subsequently rezoned industrial or light industrial. Nowhere in the complaint do appellants specifically allege how other properties are similar in all material respects to the property that is the subject of this action. And, nowhere in the complaint do appellants allege whether the "permitted" non-residential rezoning of other properties occurred before or after the adoption of the Comprehensive Plan. If, as it appears by the sketchy allegations in appellants' complaint, the property rezoned by the county (at an unspecified time) in favor of other landowners was not originally zoned as rural ranchette or agricultural, then the property was not similarly situated to appellants' property for purposes of establishing a denial of equal protection. Thus, for example, a decision by Martin County to permit rezoning of already commercially zoned land for industrial development simply does not result in different treatment of similarly situated properties.
 
 
 42
 It is beyond question that "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."[16] As this court has recognized with regard to differential treatment of landowners by zoning boards, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause."[17] Because appellants here have failed sufficiently to allege a "classification of similarly situated persons caused by intentional or purposeful discrimination,"[18] they cannot claim a denial of equal protection.
 
 
 43
 Moreover, appellants do not claim that they were denied the change in zoning because they were members of a suspect or even a quasi-suspect group.[19] Nor can it be said that the change in zoning was a "fundamental right."[20] Plaintiffs allege merely that in denying their application for rezoning while redesignating the property of others on its own initiative, the Board denied the appellants equal protection by acting arbitrarily and intentionally.[21]
 
 
 44
 To succeed on their claim of unconstitutional denial of equal protection, appellants must demonstrate that they were treated differently as the result of actions that did not "rationally advanc[e] a reasonable and identifiable government objective."[22] Appellants, in this case, however, have failed even to allege facts sufficient to withstand a motion to dismiss their claim of denial of equal protection.
 
 
 45
 The pleading requirement, as articulated by the majority, would permit any landowner successfully to plead a denial of equal protection every time a zoning authority draws a line at a particular point to require more restrictive use of the property on one side of the line than on the other. However, "[t]he law is well settled that legislated zoning ordinances are permissible, constitutional uses of police power and are not reviewable by district courts unless they are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' "[23] As this court has stated, it is upon a "factual showing of arbitrariness" that we will inquire whether there is "some basis in fact and law to justify the zoning action as consistent with reasonableness."[24] Claims that the county's decisions "in reviewing and denying Plaintiffs' requests have been made with malice toward the Plaintiff, have been made with reckless disregard for the rights of the Plaintiff, have been arbitrary, have been capricious, willful and wanton," are not factual allegations.[25] Absent factual allegations of arbitrariness, we do not reach the question whether the actions of the zoning authority were reasonable.
 
 
 46
 Because I would hold that appellants have failed to allege facts sufficient to raise a substantial federal question, I would dismiss appellants' equal protection claims. On this basis, I dissent from the majority's holding that the equal protection claim was sufficiently pled to establish a federal constitutional question.
 
 
 47
 2. As Applied Arbitrary and Capricious Due Process Claim. Because I find that appellants have failed to establish a constitutionally cognizable deprivation of property, I respectfully dissent from that portion of the court's opinion reversing the district court's dismissal of the arbitrary and capricious due process claim.
 
 
 48
 In reviewing the district court's dismissal of that portion of the complaint alleging an arbitrary and capricious denial of due process, this court must determine whether, accepting the allegations in the plaintiffs' complaint as true, the action by the zoning authority is an abuse of governmental power sufficient to allege a constitutional violation.[26] "Although 42 U.S.C. Sec. 1983 is a species of tort law, not every violation of state or local law by a governmental body or governmental actor constitutes an invasion of federally protected rights. Plaintiff in order to prevail must show a constitutional violation."[27] Note, also, that the actions of zoning commissions are entitled to a presumption of constitutional validity.[28]
 
 
 49
 To state an arbitrary and capricious due process claim in the context of section 1983, plaintiffs must prove, first, that there has been a deprivation of a federal constitutionally protected interest, and second, that the deprivation, if any, resulted from an abuse of governmental power sufficient "to raise an ordinary tort ... to the stature of a violation of the Constitution."[29]
 
 
 50
 The plaintiffs allege that the value of their property has been diminished significantly by the Board's denial of their zoning request. Appellants further allege that they cannot sell their property. The majority holds that plaintiffs can establish a property deprivation by showing that this alleged diminution in the value of their property was more than a simple fluctuation in value incident to governmental decisionmaking. There is no basis in law for this holding. Under the first prong of the test set forth in Rymer and reiterated in Greenbriar, appellants have failed to show that they were deprived of a constitutionally cognizable property interest without due process of law.
 
 
 51
 "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."[30] To have a property interest, a person "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[31] Similarly, the Supreme Court has recognized that, while zoning, by its nature "interferes" significantly with owners' uses of property, "[i]t is hornbook law that '[m]ere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance or rezoning.' "[32]
 
 
 52
 First Evangelical Lutheran Church v. County of Los Angeles, cited by the majority, does not hold otherwise. In that case, the Supreme Court recognized that " '[a] reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project,' but '[s]uch changes in value are incidents of ownership.' "[33] The Court held only that "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective."[34] Similarly, the Court in Penn Central Transportation Co. v. New York City[35] previously had recognized that the denial of the most profitable use of property is not a taking. The Court, there, in considering whether refusal by the Landmarks Preservation Commission to approve plans for construction of a building over Grand Central Terminal constituted a taking, emphasized that it could not determine whether a taking had occurred until it knew "that appellants will be denied any use of any portion of the airspace above the Terminal."[36]
 
 
 53
 To determine whether appellants have a cognizable interest in having their property rezoned industrial, we look to state law.[37] Under Florida law, a property owner has no vested interest in either an existing zoning classification or in a zoning classification subsequently sought.[38] Similarly, absent a showing that the property as zoned at the time of purchase was not suited for the purpose for which it was zoned, one who has acquired property for a purpose known to be prohibited by the current zoning ordinance cannot contend that a zoning change is needed to prevent confiscation of his property.[39] A zoning ordinance is not confiscatory because a single reasonable use is denied.[40]
 
 
 54
 This issue is similar to that in United Land Corporation v. Clarke,[41] in which developers claimed that the county zoning administration and county attorney denied them due process by refusing to issue a soil erosion permit. The district court dismissed their complaint, holding that plaintiffs had no legitimate claim of entitlement to the permit. The court of appeals, in affirming the district court's dismissal of the complaint under 42 U.S.C. Sec. 1983, held that where no property interest existed in the issuance of the erosion control permit, action taken by the zoning administration and the county attorney did not infringe the developer's rights secured by the Fourteenth Amendment.[42] United Land Corporation, and the case before this court, should be contrasted with Wheeler v. Pleasant Grove,[43] in which plaintiffs, in reliance on a previously obtained and issued land use permit, began construction on the property in question. There, the fifth circuit held that a subsequent ordinance that effectively revoked permission to build was a confiscatory taking of the permit itself because of plaintiff's prior reliance on the issued permit.
 
 
 55
 Appellants in this case have not shown that they had a protectible property interest in having their rezoning application approved. Pursuant to Martin County's Comprehensive Plan, their property was zoned rural ranchette and agricultural when they purchased it, and it remains so today. The purchase price of the property presumably reflected the market value of the property as zoned at the time of purchase. Appellants contention that they cannot use, develop, or sell the properties in question is patently implausible; any hardship resulting from the present zoning designation is self-imposed.
 
 
 56
 Because appellants allege only that the diminution in property value incident to the Board's denial of their application for a change in zoning denied them due process of law, appellants have not alleged an infringement of property rights secured by the Fourteenth Amendment. I, therefore, would reject appellants' attempt to bootstrap their zoning claims into federal court by attempting to state a constitutional violation.
 
 
 57
 B. Ripeness.
 
 
 58
 Ripeness, as this court has noted, "goes to whether the district court had subject matter jurisdiction."[44] Thus, yet another threshold inquiry on review is whether, as a jurisdictional issue, appellants' claims against the county are ripe. On the ripeness issue, we review de novo, as a question of law, the district court's application of Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City.[45]
 
 
 59
 Because I agree that appellants' due process taking and just compensation claims are premature under the Supreme Court's decision in MacDonald, Sommer & Frates v. County of Yolo[46] and Williamson County, I consider below only whether appellants' equal protection and arbitrary and capricious due process claims are ripe for review.
 
 
 60
 The majority relies on a footnote in this court's recent decision in Eide v. Sarasota County[47] to hold that the reapplication requirement of MacDonald "has no bearing on as applied arbitrary and capricious due process claims."[48] However, the landowner in Eide had failed to submit to the zoning authority "even a single plan for the commercial development of his property,"[49] and on this basis was denied relief. Also, "he [had] not submitted a petition to rezone his properties from their present residential zoning to commercial zoning."[50] The county, therefore, had not been given even a first opportunity to apply the sector plan to the property owner's property. The fact that Eide had failed to reapply for some change in zoning, then, was irrelevant to the holding of that case. I, therefore, would hold that we are not bound by dicta in the Eide footnote.
 
 
 61
 I also would reject the reasoning behind the Eide court's determination that landowners claiming a denial of substantive due process or equal protection need not reapply to the zoning authority to determine what extent of development will be permitted. In so concluding, I adopt the reasoning of the seventh, ninth, and tenth circuits that the finality requirement applied by the Court in MacDonald and Williamson County to takings and just compensation claims "applies as well to equal protection and due process claims."[51]
 
 
 62
 The court in Eide, and this court in its reliance on Eide, completely misconstrue the nature of the ripeness inquiry. In Eide, the court reasoned that the MacDonald reapplication requirement does not apply to an as-applied arbitrary and capricious due process claim because the landowner "does not allege the deprivation of all beneficial use of his land, and, therefore, a court does not need the additional determination in order to adjudicate his claim."[52] However, the core of the Supreme Court's jurisprudence on the ripeness issue is "an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulation that purports to limit it."[53] Constitutional challenges of land use decisions, the Court has held, are "ripe for review" when the aggrieved party has received the zoning authority's " 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.' "[54] This final and authoritative determination must expose the "nature and extent of permitted development."[55] Appellants, here, have not yet sought from Martin County a final determination of how their land may be used.
 
 
 63
 The Fourteenth Amendment requires that "[n]o State shall ... deprive any person of ... property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."[56] Thus, each of appellants' claims, whether denominated as a takings claim, a denial of equal protection, or arbitrary and capricious denial of due process has as its gravamen the deprivation of a property interest. And, where the question before the court is whether denial of that interest by the zoning board was arbitrary and capricious,
 
 
 64
 [u]ntil it has a final action before it, a court is unable to evaluate whether property was taken and whether the local authorities position was arbitrary. Thus, the Williamson County ripeness test applies with equal force to substantive due process claims.[57]
 
 
 65
 Similarly, on the denial of equal protection, it cannot be determined whether the Board acted irrationally in differently treating similarly situated landowners until the complaining landowners have received a "final and authoritative" determination exposing the "nature and extent of permitted development."[58] As the ninth circuit in St. Clair v. Chico reasoned, after first acknowledging that the same ripeness test applies generally to constitutional challenges of land use regulations,[59]
 
 
 66
 The purpose of the ripeness doctrine is to avoid premature judicial review of administrative action. This goal is accomplished by deferring review of a planning commissions' land use decisions until they represent a " 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.' " MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986) (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985)). The finality requirement is satisfied only if the planning commission first rejects a "development plan" and then denies a variance from its regulations. E.g., Herrington, 857 F.2d at 569; Kinzli, 818 F.2d at 1454.[60]
 
 
 67
 Thus, "regardless of the type of claim, it is generally impossible to determine the extent of the infringement absent a final determination by the relevant governmental body."[61]
 
 
 68
 As this court acknowledged in Eide v. Sarasota County, "[d]ecisions on ripeness issues are fact-sensitive."[62] In this case, as the majority correctly observes, "the plaintiffs do not allege that they have sought variances or pursued alternative, less ambitious development plans."[63] And, as the ninth circuit in St. Clair explained, "[t]his two-step test can be avoided only if compliance would be futile, and even then only if the property owner first makes at least one " 'meaningful application.' "[64] Although appellants here allege that there is no other variance or exception procedure available to urge reconsideration,[65] they cannot rely on the futility exception because they have failed to make "meaningful application."[66] A meaningful application, the MacDonald Court noted, does not include a request for "exceedingly grandiose development."[67] Here, as the majority acknowledges, "less ambitious development plans" could have been pursued. Moreover, "mere allegations by a property owner that it has done everything possible to obtain acceptance of a development proposal will not suffice to prove futility."[68] Nowhere in their complaint do appellants set forth factual allegations sufficient to plead futility. Thus, for example, they do not allege how, in fact, they are barred from applying for an amendment to the Comprehensive Plan to change their zoning requirements from rural ranchette or agricultural to commercial.
 
 
 69
 Denial, by the zoning authority, of the extreme rezoning requested by appellants does not preclude less intensive, but still valuable development.[69] "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with one hand they may give back with the other."[70] The complaining property owner, therefore, "has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds."[71] Certainly, the property owner must apply for something other than an extreme change in zoning.
 
 
 70
 To determine at this time whether the action of the Board was arbitrary and capricious would be premature. Such an inquiry would require us to speculate what applications appellants might have filed with the Board and how the Board might have responded to these hypothetical petitions. "It is precisely this type of speculation that the ripeness doctrine is intended to avoid."[72] Because no meaningful application has been submitted, the Board has not been permitted to make a final determination regarding allowable development of the property at issue. Therefore, appellants' equal protection and as-applied arbitrary and capricious due process claims are not ripe for federal adjudication.[73]
 
 C. Pendent State Law Claim
 
 71
 United Mine Workers v. Gibbs[74] recognized that if a federal claim against a party is dismissed before trial, the pendent state law claim often should be dismissed as well. Because I would dismiss as premature all of the federal claims on appellees' motion to dismiss, I would hold that appellants' pendent state law claims also should be dismissed.[75]
 
 IV. CONCLUSION
 
 72
 Appellants simply have not alleged a substantial federal question. In alleging a denial of substantive due process, appellants cannot, as a matter of law, establish that they have a protectible property interest in having their rezoning application approved. Their equal protection claim also falls because they have failed sufficiently to allege that the county treated them differently than other similarly situated property owners. Neither have they made any "factual showing"[76] that the actions of the county in denying their rezoning application were "clearly arbitrary and unreasonable."[77] Therefore, I dissent from that portion of the court's decision permitting appellants' equal protection and arbitrary and capricious due process claims to go forward.
 
 
 73
 I also would hold with the seventh, ninth, and tenth circuits that the Williamson County and MacDonald ripeness test applies to equal protection and arbitrary and capricious due process claims. Appellants in these cases have not alleged that they sought variances or pursued alternative, less ambitious development plans. And, as the Supreme Court's decision in MacDonald indicates, this is exactly the kind of review the ripeness doctrine was designed to prevent. For the reasons stated above, I dissent from that portion of the court's opinion permitting appellants' equal protection and arbitrary and capricious due process claims to go forward. Because all the federal claims drop out, I also would dismiss appellants' pendent state law claims.
 
 
 
 *
 Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Rural Ranchette allows development at one house per five acres
 
 
 [2]
 Plaintiffs sued the Board members, in their official and individual capacities, and Martin County. We refer to the defendants collectively as the "Board."
 
 
 [3]
 The district court relied on the intermediate appellate court opinion in Joint Ventures. See Joint Ventures, Inc. v. Dept. of Transp., 519 So.2d 1069 (Fla.Dist.Ct.App.1988). The Florida Supreme Court's opinion, cited above, quashed the intermediate court's opinion. Joint Ventures, at 629. The Florida Supreme Court recognized, however, that a property owner has the right to bring an inverse condemnation proceeding in response to an alleged regulatory taking. Id., at 622
 
 
 [4]
 The court, in an alternative holding as to counts five and ten, found that if plaintiffs' interference with prospective economic opportunity claim was based on state law, it failed to allege the necessary element of a contract or business relationship with prospective customers
 
 
 [5]
 The plaintiffs do not challenge the district court's holding that the Board members are entitled to legislative immunity under Lake Country Estates v. Tahoe Planning Agency, 440 U.S. 391, 404, 99 S.Ct. 1171, 1178-79, 59 L.Ed.2d 401 (1979), and DeSisto College v. Line, 888 F.2d 755, 765 (11th Cir.1989)
 
 
 [6]
 Each count asks for an order declaring that prohibiting the plaintiffs from using their land for industrial purposes violates plaintiffs' rights. Each count also asks for an injunction enjoining the "county" from enforcing the County Comprehensive Land Use Plan. Counts one and six ask for compensatory damages against the individual defendants, and counts one, two, five, six, seven, and ten ask for punitive damages against the individual board members
 
 
 [7]
 Accordingly, we do not reach the issue of whether suits against officials for prospective injunctive relief may be brought only against defendants in their official capacities
 
 
 [8]
 The Fifth Amendment provides in part:
 [P]rivate property [shall not] be taken for public use, without just compensation.
 U.S. Const.Amend. V.
 
 
 [9]
 This Circuit further distinguishes between "facial" arbitrary and capricious due process challenges, see Eide, at 722, and "as applied" arbitrary and capricious due process challenges. Id
 
 
 [10]
 This Circuit distinguishes between equal protection challenges to a statute "on its face," and challenges to a statute "as applied to the property involved." Eide, at 722
 
 
 [11]
 Counts one and six appear to state due process takings claims. Counts three and eight allege that the present zoning of the plaintiffs' parcels is unreasonable, which appear to be as applied arbitrary and capricious substantive due process claims. See Eide, at 721. We separately analyze these "due process" claims
 
 
 [12]
 This Circuit has not resolved the issue of whether a property owner also must pursue state procedures for obtaining just compensation before a due process takings claim is ripe for adjudication. See Eide, at 721
 
 
 [13]
 Plaintiffs claim that Williamson County should not apply to their just compensation claim because they do not have a "viable" inverse condemnation claim. This appears to be nothing more than a concession that their claim of a taking is meritless because the Board has not deprived the plaintiffs of all use of their property. Accordingly, this argument lacks merit
 
 
 [1]
 Stansberry v. Holmes, 613 F.2d 1285, 1288 (5th Cir.), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980)
 
 
 [2]
 Nasser v. Homewood, 671 F.2d 432, 440 (11th Cir.1982) (citing South Gwinnett Venture v. Pruitt, 491 F.2d 5, 6 (5th Cir.) (en banc), cert. denied 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974))
 
 
 [3]
 Scudder v. Greendale, 704 F.2d 999, 1003 (7th Cir.1983) (citation omitted)
 
 
 [4]
 See MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986)
 
 
 [5]
 As our court in Eide v. Sarasota County noted, 908 F.2d 716, 722 n. 9 (11th Cir.1990), most courts describe this claim simply as a substantive due process claim. This terminology, the court noted, "has contributed to the confusion between an arbitrary and capricious due process claim and a due process takings claim." Id. For clarity and consistency, therefore, I refer to this claim as an "arbitrary and capricious due process" claim. Whatever the label, the issue is the same: "Substantive due process protects a general right of an individual to be free from the abuse of governmental power." Rymer v. Douglas County, 764 F.2d 796, 802 n. 4 (11th Cir.1985)
 
 
 [6]
 Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
 
 
 [7]
 See Ex parte Poresky, 290 U.S. 30, 31-32, 54 S.Ct. 3, 4-5, 78 L.Ed. 152 (1933) ("In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented.")
 
 
 [8]
 Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Bracewell v. Nicholson Air Services, Inc., 680 F.2d 103, 104 (11th Cir.1982)
 
 
 [9]
 Complaint, p 42
 
 
 [10]
 Complaint, p 46
 
 
 [11]
 Complaint, p 47
 
 
 [12]
 Complaint, p 27
 
 
 [13]
 Doe v. Public Health Trust, 696 F.2d 901, 907 (11th Cir.1983) (Hatchett, J., specially concurring) (citations omitted)
 
 
 [14]
 See Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); E & T Realty v. Strickland, 830 F.2d 1107, 1112-13 (11th Cir.1987)
 
 
 [15]
 See E & T Realty, 830 F.2d 1107 (claim of unequal administration of facially neutral legislation requires showing of intentional discrimination; mere error or mistake in judgment does not violate equal protection)
 
 
 [16]
 Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940)
 
 
 [17]
 E & T Realty, 830 F.2d at 1109
 
 
 [18]
 Muckway v. Craft, 789 F.2d 517, 523 (7th Cir.1986)
 
 
 [19]
 See, e.g., Plyler v. Doe, 457 U.S. 202, 216-18, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982)
 
 
 [20]
 See, e.g., id
 
 
 [21]
 See, e.g., Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971); Logan v. Zimmerman Brush Co., 455 U.S. 422, 442, 102 S.Ct. 1148, 1161, 71 L.Ed.2d 265 (Blackmun, J. concurring)
 
 
 [22]
 Schweiker v. Wilson, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981); see also Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (because mental retardation is not a quasi-suspect classification, standard of review is no higher than is normally accorded economic and social legislation)
 This circuit has uniformly applied the rationality standard to equal protection challenges of city zoning ordinances and denials of applications for property rezoning. See Grant v. County of Seminole, 817 F.2d 731, 737 (11th Cir.1987); Nasser, 671 F.2d at 441; Couf v. De Blaker, 652 F.2d 585, 588-90 (5th Cir. Unit B 1981), cert. denied, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982); Stansberry v. Holmes, 613 F.2d 1285, 1289 (5th Cir.1980); South Gwinnett Venture v. Pruitt, 491 F.2d 5, 6 (5th Cir.) (en banc), cert. denied 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); Higginbotham v. Barrett, 473 F.2d 745, 747 (5th Cir.1973).
 
 
 [23]
 Grant, 817 F.2d at 736 (emphasis added) (quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)); see also Greenbriar, Ltd. v. Alabaster, 881 F.2d 1570, 1577 (11th Cir.1989); Nasser, 671 F.2d at 440-41; Couf, 652 F.2d at 590; South Gwinnett Venture, 491 F.2d at 7; Higginbotham, 473 F.2d at 747
 
 
 [24]
 South Gwinnett Venture, 491 F.2d at 7
 
 
 [25]
 See e.g., Estate of Himelstein v. Ft. Wayne, 898 F.2d 573, 578 (7th Cir.1990) (plaintiffs' complaint alleging that "[a]ll of the Defendants' acts were done knowingly, willfully and maliciously," with the intention of depriving plaintiffs of equal protection should be dismissed for failure to allege any facts in support of their claim)
 
 
 [26]
 Rymer v. Douglas County, 764 F.2d 796, 803 (11th Cir.1985)
 
 
 [27]
 Id. at 800 (citing Williams v. Kelley, 624 F.2d 695, 697 (5th Cir.1980), cert. denied, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981))
 
 
 [28]
 South Gwinnett, 491 F.2d at 7. See also Indialantic v. McNulty, 400 So.2d 1227 (Fla. 5th Dist.Ct.App.1981) (under separation of powers doctrine, zoning decisions are primarily legislative in nature and should be made by zoning authorities accountable to their constituents; courts are not "super" zoning review boards)
 
 
 [29]
 Williams v. Kelley, 624 F.2d 695, 697 (5th Cir.1980); see Rymer, 764 F.2d at 803 (setting forth two-part test); Greenbriar, 881 F.2d at 1577 (applying two-part test to decision of zoning authority denying rezoning request)
 
 
 [30]
 Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) (emphasis added)
 
 
 [31]
 Id. 408 U.S. at 577, 92 S.Ct. at 2709. See also Marine One, Inc. v. Manatee County, 877 F.2d 892, 894 (11th Cir.1989) (threshold determination is whether property owners "have a property interest protected by the Constitution")
 
 
 [32]
 Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 674 n. 8, 96 S.Ct. 2358, 2362 n. 8, 49 L.Ed.2d 132 (1976) (quoting 8 E. McQuillan, Municipal Corporations Sec. 25.44, at 111 (3d ed. 1985); see also Goldblatt v. Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962) (ordinance may lawfully prohibit best and most beneficial use)
 
 
 [33]
 First Lutheran Church, 482 U.S. 304, 320, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) (quoting Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939))
 
 
 [34]
 Id. 482 U.S. at 321, 107 S.Ct. at 2389
 
 
 [35]
 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)
 
 
 [36]
 Id. at 137-38, 98 S.Ct. at 2665-66
 
 
 [37]
 Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. at 2709 (property interests are created, not by the Constitution, but by "an independent source such as state law"); Marine One, 877 F.2d at 894
 
 
 [38]
 See Gainesville v. Cone, 365 So.2d 737, 739 (Fla.App. 1 Dist.1978) (because no property interest existed in continuation of existing zoning or in new zoning classification applied for, city could amend land use plan of such property to conform to prior zoning classification; Epifano v. Town of Indian River Shores, 379 So.2d 966 (Fla.App. 4 Dist.1979) (no vested right to certain zoning)
 
 
 [39]
 Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 2d Dist.Ct.App.1979)
 
 
 [40]
 Id. at 315
 
 
 [41]
 613 F.2d 497 (4th Cir.1980)
 
 
 [42]
 Id. at 501 (citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); see also Hollywood v. Hollywood Beach Hotel Co., 283 So.2d 867 (Fla.App. 4 Dist.1973), aff'd in part and rev'd in part on other grounds, 329 So.2d 10 (Fla.1976)
 
 
 [43]
 664 F.2d 99 (5th Cir.1981), cert. denied, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982)
 
 
 [44]
 Greenbriar, 881 F.2d at 1573
 
 
 [45]
 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); see East-Bibb Twiggs Neighborhood Association v. Macon Bibb Planning & Zoning Comm'n, 896 F.2d 1264, 1266 (11th Cir.1989) (citing Georgia Power Co. v. Baker, 830 F.2d 163, 165 (11th Cir.1987)); Atlantic Land & Improv. Co. v. United States, 790 F.2d 853, 857 (11th Cir.1986))
 
 
 [46]
 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986)
 
 
 [47]
 908 F.2d 716, 725 n. 16 (11th Cir.1990)
 
 
 [48]
 Opinion, at 1541
 
 
 [49]
 Eide, 908 F.2d at 726
 
 
 [50]
 Id
 
 
 [51]
 Herrington v. County of Sonoma, 834 F.2d 1488, 1494 (9th Cir.1987). See also Unity Ventures v. County of Lake, 841 F.2d 770, 774-76 (7th Cir.1988); Landmark Land Co. of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989)
 Other ninth circuit opinions affirming application of MacDonald and Williamson County to equal protection and as-applied arbitrary and capricious due process claims include Southern Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498 (9th Cir.1990); Sinaloa Lake Owners Ass'n v. Simi Valley, 882 F.2d 1398, 1404 (9th Cir.1989); St. Clair v. Chico, 880 F.2d 199 (9th Cir.1989); Engel v. Clark County, 878 F.2d 1438 (9th Cir.1989) (table); Hoehne v. County of San Benito, 870 F.2d 529 (9th Cir.1989); Shelter Creek Dev. Corp. v. Oxnard, 838 F.2d 375 (9th Cir.1988); Kinzli v. Santa Cruz, 818 F.2d 1449 (9th Cir.1987).
 
 
 [52]
 Eide, 908 F.2d at 725 n. 16
 
 
 [53]
 MacDonald, 477 U.S. at 351, 106 S.Ct. at 2567-68
 
 
 [54]
 Id. (quoting Williamson County, 473 U.S. at 191, 105 S.Ct. at 3119) (emphasis added)
 
 
 [55]
 Id., 106 S.Ct. at 2567; see also Norco Construction, Inc. v. King County, 801 F.2d 1143, 1145-46 (9th Cir.1986)
 56 U.S. Const.Amend. XIV, Sec. 1.
 
 
 [57]
 Landmark Land Co. of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989) (citing Williamson County, 473 U.S. at 199-200, 105 S.Ct. at 3123; Herrington v. Sonoma County, 857 F.2d 567, 569 (9th Cir.1988); Norco Const. Co., 801 F.2d at 1145))
 
 
 [58]
 MacDonald, 477 U.S. at 350, 106 S.Ct. at 2566-67
 
 
 [59]
 880 F.2d 199, 202 (9th Cir.1989)
 
 
 [60]
 Id. at 202-03
 
 
 [61]
 Sinaloa Lake Owners Ass'n, 882 F.2d at 1404
 
 
 [62]
 908 F.2d 716, 727 (11th Cir.1990)
 
 
 [63]
 Opinion, at 1541
 
 
 [64]
 880 F.2d at 203; see also Herrington, 834 F.2d at 1495
 
 
 [65]
 Complaint, pp 19-20, 22-23
 
 
 [66]
 Herrington, 857 F.2d at 569; Kinzli, 818 F.2d at 1454-55
 
 
 [67]
 477 U.S. at 353 n. 9, 106 S.Ct. at 2568 n. 9
 
 
 [68]
 Herrington, 834 F.2d at 1496
 
 
 [69]
 MacDonald, 477 U.S. at 353, 106 S.Ct. at 2569
 
 
 [70]
 Id. at 350, 106 S.Ct. at 2567
 
 
 [71]
 Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989)
 
 
 [72]
 Southern Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir.1990)
 
 
 [73]
 It is clear that appellants need not have pursued state remedies in order for their arbitrary and capricious due process or equal protection claims to be ripe. First, the issue in not one of exhaustion of state remedies. See Williamson County, 473 U.S. at 192, 105 S.Ct. at 3119 ("the question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable"); id. at 193, 105 S.Ct. at 3120 ("While it appears that the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by county authorities, ... respondent would not be required to resort to those procedures before bringing its Sec. 1983 action, because those procedures clearly are remedial."). The requirement in Williamson County that appellants exhaust available state compensation remedies before pursuing their claim in federal court derives not from any exhaustion requirement but from "the special nature of the Just Compensation Clause." Williamson County, 473 U.S. at 196 n. 14, 105 S.Ct. at 3121 n. 14. As the ninth circuit has explained, this requirement "states only that the just compensation clause cannot be violated until the state has subsequently declined to pay for the taking; it has no application to other types of constitutional claims, even where those claims arise out of facts that also give rise to a taking claim." Sinaloa Lake Owners Ass'n, 882 F.2d at 1404. See also Eide, 908 F.2d at 725-26 n. 16 ("[T]he just compensation hurdle applied in the just compensation claim context does not apply to arbitrary and capricious due process claims.... The reason for this is that an arbitrary and capricious act by a government is unconstitutional even if the government pays just compensation."). The injury has occurred regardless of the availability of a state procedure for compensation of that injury. In fact, the Supreme Court in Williamson County explicitly distinguished procedural due process claims from takings claims reasoning that due process may be violated regardless of the availability of post-deprivation remedies. 473 U.S. at 195-96 n. 14, 105 S.Ct. at 3121 n. 14
 Again, however, because appellants have not satisfied the finality requirement, we need not reach the question whether they also must satisfy the just compensation requirement.
 
 
 [74]
 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)
 
 
 [75]
 See also Landmark Land Co. of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 725 (10th Cir.1989) (given early stage at which the federal claims are dismissed, pendent state law claims also should be dismissed)
 
 
 [76]
 South Gwinnett Venture v. Pruitt, 491 F.2d 5 (5th Cir.) (en banc), cert. denied, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)
 
 
 [77]
 Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)